UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

ROCKNE "ROCKY" MILLER,
                          *Plaintiff*,

v.

ELIZABETH ZIEGLER, in her official capacity as Executive Director of the Missouri Ethics Commission, and CHERYL D.S. WALKER, HELENE J. FRISCHER, WAYNE HENKE, ROBERT COOK, and SHERMAN "BILL" W. BIRKES, JR., in their official capacities as Commissioners of the Missouri Ethics Commission,
                          *Defendants*.

## VERIFIED COMPLAINT

### I. Introduction

"Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)). "[T]he Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Id.* "In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue." *Id.* at 347 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784-85 (1978)).

The First Amendment also guarantees the right "to petition the Government for a redress of grievances," and lobbying is therefore constitutionally protected conduct. *Calzone v. Summers*, 942 F.3d 415, 422 (8th Cir. 2019); *see also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that ... efforts ... to lobby District officials to enact favorable legislation ... were activities that were fully protected by the First Amendment.") *and Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) ("While the term 'lobbyist' has become encrusted with invidious connotations, every person or group engaged ... in trying to persuade Congressional action is exercising the First Amendment right of petition.").

In 2018, the Missouri Constitution was amended by initiative petition to enact Amendment 1, which contained wide-ranging revisions to the state's ethics and campaign finance laws. Amendment 1[1], as enacted, included the following:

> After December 6, 2018, no person serving as a member of or employed by the general assembly shall act or serve as a paid lobbyist, register as a paid lobbyist, or solicit prospective employers or clients to represent as a paid lobbyist during the time of such service until the expiration of two calendar years after the conclusion of the session of the general assembly in which the member or employee last served and where such service was after December 6, 2018.

MO. CONST. art. III, § 2(a) (the "**Lobbying Ban**").

---

[1] Several provisions of Amendment 1 have already been held unconstitutional. *See Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759 (8th Cir. 2018); *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944 (8th Cir. 2018); *Make Liberty Win v. Ziegler*, 478 F. Supp. 3d 805 (W.D. Mo. 2020).

Plaintiff Rockne "Rocky" Miller is a licensed professional engineer who has spent more than 30 years providing those services around the state. He is particularly experienced in environmental engineering. Miller was elected State Representative for Missouri's 124th district in 2012 and served in the Missouri House of Representatives from 2013 to 2021. He is therefore subject to the Lobbying Ban.

In November 2021, Miller was approached by a Missouri LLC ("Prospective Client") which wished to hire Miller to lobby officials in Missouri's executive and legislative branches. The proposed lobbying required knowledge of the legislative and regulatory process, as well as expertise in environmental engineering. Due to Miller's familiarity with the state bureaucracy from his legislative service and his experience in environmental engineering, Miller was uniquely qualified to advocate on Prospective Client's behalf. However, Prospective Client's goals required Miller to serve as both an "executive lobbyist" and a "legislative lobbyist" under Mo. Rev. Stat. § 105.470.

Defendants are the Executive Director and Commissioners of the Missouri Ethics Commission (collectively, "MEC"). Following Prospective Client's inquiry, Miller attempted to register as a lobbyist with MEC in order to comply with the registration and reporting requirements of Mo. Rev. Stat. § 105.473. However, he was unable to register because the application requires him to attest "[u]nder penalties of perjury" to his eligibility, which he knows MEC denies due to the Lobbying Ban. Miller cannot lobby on Prospective Client's behalf without registering with MEC or risking prosecution for violating Missouri's lobbyist registration laws. Violation of those laws carry civil fines up to $10,000 and criminal penalties that could result in a felony conviction. Mo. Rev. Stat. §§ 105.473, 105.478. Upon learning that Miller was unable to

Page 3 of 15

Case 2:21-cv-04233-MDH   Document 1   Filed 12/16/21   Page 3 of 15

register as a lobbyist, Prospective Client considered joining in this suit against MEC but declined because of the potential lost time for advocacy and the risk that MEC could take action under color of law to enforce the Lobbying Ban against Miller and/or Prospective Client. Ultimately, Prospective Client decided not to hire Miller.

The Lobbying Ban acts as a prior restraint on speech by completely banning Miller from speaking to legislators and executive department officials on behalf of others. The Lobbying Ban is also a content-based restriction on speech because it regulates the substance of what Miller may say; it permits him to speak about his own interests, but not Prospective Client's. Thus, the Lobbying Ban also restricts Miller's right to petition the government. It also infringes on Prospective Client's right to petition because it prevents Prospective Client from employing its chosen advocate to navigate the complicated regulatory bureaucracy, legislative process, and environmental issues on Prospective Client's behalf. The Lobbying Ban serves no legitimate or compelling government interest and is not narrowly tailored to any such goal.

MEC's continued enforcement of the Lobbying Ban thereby deprives Miller and Prospective Client of rights, privileges, and immunities under the First and Fourteenth Amendments. MEC must be enjoined from enforcing the Ban, and Miller must be awarded all damages caused by MEC's violation of his constitutional rights.

## II. Jurisdiction and Venue

1. This Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it presents federal questions arising under the U.S. Constitution.

2. The Western District of Missouri is the proper venue for this lawsuit pursuant to 28 U.S.C. § 1391(b)(1)-(2) because Defendant Elizabeth Ziegler's principal office is located in Jefferson City, Missouri, and a substantial part of the events giving rise to this claim occurred in Jefferson City, Missouri.

### III. Parties

3. Plaintiff Rockne "Rocky" Miller is a resident of unincorporated Miller County, Missouri.

4. Defendant Elizabeth Ziegler is the Executive Director of the Missouri Ethics Commission. Her principal office is in Jefferson City, Missouri.

5. Defendants Cheryl D.S. Walker, Helene J. Frischer, Wayne Henke, Robert Cook, and Sherman "Bill" W. Birkes, Jr. are Commissioners of the Missouri Ethics Commission.

6. Defendants are collectively referred to herein as "MEC."

### IV. General Allegations

7. In 2018, the Missouri Constitution was amended by initiative petition to enact, *inter alia*, the following provision (the "**Lobbying Ban**"):

> After December 6, 2018, no person serving as a member of or employed by the general assembly shall act or serve as a paid lobbyist, register as a paid lobbyist, or solicit prospective employers or clients to represent as a paid lobbyist during the time of such service until the expiration of two calendar years after the conclusion of the session of the general assembly in which the member or employee last served and where such service was after December 6, 2018.

Mo. Const. art. III, § 2(a).

8. Miller represented Missouri's 124th district in the state House of Representatives from January 9, 2013 to January 6, 2021, when he left that office due to term limits.

9. Miller is therefore subject to the Lobbying Ban according to its terms.

10. Miller is also a licensed Professional Engineer and a licensed Professional Land Surveyor.

11. Miller has more than 30 years' experience in engineering and surveying, and has developed an expertise in, among other things, environmental engineering.

12. In November 2021, Prospective Client approached Miller about lobbying on its behalf before various executive officials and the Missouri state legislature during the 2022 legislative session.

13. Prospective Client's goals require Miller to serve as both an "executive lobbyist" and a "legislative lobbyist." Mo. Rev. Stat. § 105.470.

14. Following Prospective Client's inquiry, Miller attempted to register as a lobbyist with MEC in order to comply with the registration and reporting requirements of Mo. Rev. Stat. § 105.473, but could not because the application requires him to attest "[u]nder penalties of perjury" to his eligibility, which he knows MEC denies due to the Lobbying Ban.

15. Miller cannot lobby on Prospective Client's behalf without registering with MEC or risking prosecution for violating Missouri's lobbyist registration laws. Violation of those laws carry civil fines up to $10,000 and criminal penalties that could result in a felony conviction. Mo. Rev. Stat. §§ 105.473, 105.478.

16. Upon learning that Miller was unable to register as a lobbyist, Prospective Client considered joining in this suit against MEC but declined to do so because of the potential lost time for advocacy and the risk that MEC takes official action to enforce the Lobbying

Ban against Miller and/or Prospective Client. Ultimately, Prospective Client declined to hire Miller as a lobbyist because "[he] can't explain the change needed directly to the legislators" with the Lobbying Ban in effect.

17. MEC's continued enforcement of the Lobbying Ban denies income to Miller that he would otherwise be able to earn as a lobbyist for Prospective Client and potentially others, and Miller has thereby been damaged.

18. MEC's continued enforcement of the Lobbying Ban denies Prospective Client its chosen advocate before the state legislative and executive branches.

19. MEC's continued enforcement of the Lobbying Ban deprives Miller and Prospective Client of rights, privileges, and immunities under the First and Fourteenth Amendments. *See* 42 U.S.C. § 1983.

20. As described herein, MEC is and has been acting under color of law as Missouri's designated enforcer of ethics, lobbying, and campaign finance laws. *See id.*

### V. Count One – Facial Challenge to the Lobbying Ban (Freedom of Speech)

21. Miller hereby incorporates his preceding allegations as if fully set out herein.

22. *Prior Restraint.* The Lobbying Ban is a facially unconstitutional prior restraint on speech, because it bans Miller from saying certain things, backed by the threat of criminal prosecution. *Citizens United*, 558 U.S. at 340.

23. *Content-Based Restriction.* The Lobbying Ban is facially unconstitutional because it regulates Miller's speech "because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

24. *Speaker-Based Restriction.* The Lobbying ban is facially unconstitutional because it permits lobbying speech by most speakers but not a certain class of others (recent legislators including Miller). *Citizens United*, 558 U.S. at 341 ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others."). "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* "Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Id.* "By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice." *Id.* at 340-341. "The First Amendment protects speech and speaker, and the ideas that flow from each." *Id.* at 341.

25. *Chilling Effect – Miller's Speech.* The Lobbying Ban and MEC's enforcement thereof have had a chilling effect on speech. The Lobbying Ban has prevented Miller from lobbying on behalf of Prospective Client and possibly others who might have hired him but for the Ban. MEC has also issued guidance and instructed another former legislator to refrain from lobbying, and warned against other activities which it knows are not expressly covered by the Lobbying Ban. *See* Advisory Opinion No. 2021.02.L.002 ("Nevertheless, the Commission has serious concerns about a former elected official avoiding these Constitutional prohibitions by doing indirectly that which he or she is prohibited from doing directly. The Commission cautions you to be very careful …").

26. *Chilling Effect – Solicitation.* Further, Miller cannot solicit other possible clients during the Lobbying Ban's application to him, even if he does not actually lobby for them. *See* Mo. Const. art. III, § 2(a) ("or solicit prospective employers or clients to represent as a paid lobbyist"). Miller only learned of Prospective Client's interest in his services because Prospective Client approached him; there may be other opportunities for that are or were available to Miller that he has missed because of the chilling effect of the Ban.

27. *Strict Scrutiny.* Each of the foregoing subject the Lobbying Ban to strict scrutiny. *Citizens United*, at 340. The Lobbying Ban cannot survive strict scrutiny because it is not furthered by a compelling government interest, and to the extent it does further such an interest, it is not narrowly tailored to achieve that interest. *See id.*

28. The present enforcement of, and substantial likelihood of MEC continuing to enforce, the Lobbying Ban against Miller substantially burdens, and would burden, Miller's First Amendment right to freedom of speech, which is enforceable against MEC through the Fourteenth Amendment.

29. Miller has lost income and faces the prospect of additional lost income, civil penalties and criminal conviction and penalties, the cost and expense of defending himself, and public embarrassment if MEC takes official action to enforce the Lobbying Ban against him.

30. Miller has incurred and will continue to incur court costs and attorneys' fees in addressing MEC's violation of his constitutional rights.

31. Miller has thereby been damaged.

## VI. Count Two – Facial Challenge to the Lobbying Ban (Right to Petition)

32. Miller hereby incorporates his preceding allegations as if fully set out herein.

33. *Prior Restraint.* Under the First and Fourteenth Amendments, Miller and Prospective Client have the right "to petition the Government for a redress of grievances" and lobbying is therefore constitutionally protected conduct. *Calzone*, 942 F.3d at 422 (successful challenge to MEC's interpretation of its lobbying regulations); *see also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that … efforts … to lobby District officials to enact favorable legislation … were activities that were fully protected by the First Amendment.") *and Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) ("While the term 'lobbyist' has become encrusted with invidious connotations, every person or group engaged … in trying to persuade Congressional action is exercising the First Amendment right of petition."). By restricting Miller's right to petition the government, the Lobbying Ban also has the effect of restricting Prospective Client's right to do the same. Government may not indirectly restrict speech by denying access to advisors or other assistance, because "effective public communication requires the speaker to make use of the services of others." *Citizens United*, at 339 (quoting *McConnell v. F.E.C.*, 540 U.S. 93, 251 (2003) (opinion of Scalia, J.)).

34. *Content-Based Restriction.* The Lobbying Ban is facially unconstitutional because it regulates Miller's right to petition the government "because of the topic discussed or the idea or message expressed," namely Prospective Client's interests. *Reed*, at 163.

Page **10 of 15**

Case 2:21-cv-04233-MDH   Document 1   Filed 12/16/21   Page 10 of 15

35. *Speaker-Based Restriction.* The Lobbying ban is facially unconstitutional because it permits petitioning the government (lobbying) by most speakers but not a certain class of others (recent legislators including Miller) and denies Prospective Client the assistance of a qualified advocate. *Citizens United*, at 341 ("Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others."). "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* "Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Id.* "By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice." *Id.* at 340-341. "The First Amendment protects speech and speaker, and the ideas that flow from each." *Id.* at 341.

36. *Chilling Effect – Miller.* The Lobbying Ban and MEC's enforcement thereof have had a chilling effect on Miller's right to petition his government. The Lobbying Ban has prevented Miller from lobbying on behalf of Prospective Client and possibly others who might have approached him but for the Ban. MEC has also issued guidance and instructed another former legislator to refrain from lobbying, as well as other activities which it knows are not expressly covered by the Lobbying Ban. *See* Advisory Opinion No. 2021.02.L.002 ("Nevertheless, the Commission has serious concerns about a former elected official avoiding these Constitutional prohibitions by doing indirectly that which

he or she is prohibited from doing directly. The Commission cautions you to be very careful ...").

37. *Chilling Effect – Solicitation.* Further, Miller cannot solicit other possible clients during the Lobbying Ban's application to him, even he does not actually lobby for them. *See* Mo. Const. art. III, § 2(a) ("or solicit prospective employers or clients to represent as a paid lobbyist"). Miller only learned of Prospective Client's interest in his services because Prospective Client approached him; there may be other opportunities that are or were available to Miller that are unknown to him because of the chilling effect of the Ban.

38. *Strict Scrutiny.* Each of the foregoing subject the Lobbying Ban to strict scrutiny. *Citizens United*, at 340. The Lobbying Ban cannot survive strict scrutiny because it is not furthered by a compelling government interest, and to the extent it does further such an interest, it is not narrowly tailored to achieve that interest. *See id.*

39. The present enforcement of, and substantial likelihood of MEC continuing to enforce, the Lobbying Ban against Miller substantially burdens, and would burden, Miller's and Prospective Client's First Amendment right to petition their government, which is enforceable against MEC through the Fourteenth Amendment.

40. Miller has lost income and faces the prospect of additional lost income, civil penalties and criminal conviction and penalties, the cost and expense of defending himself, and public embarrassment if MEC takes official action to enforce the Lobbying Ban against him.

41. Miller has incurred and will continue to incur court costs and attorneys' fees in addressing MEC's violation of his constitutional rights.

42. Miller has thereby been damaged.

## VII. Count Three – As-Applied Challenge to the Lobbying Ban (Freedom of Speech)

43. Miller hereby incorporates his preceding allegations as if fully set out herein.

44. For the reasons set forth in Count One, the Lobbying Ban is unconstitutional as applied to Miller in that the Lobbying Ban, even if enforceable against others and therefore constitutional on its face, cannot be applied to Miller without violating his First and Fourteenth Amendment rights.

45. The present application of, and substantial likelihood of MEC continuing to apply, the Lobbying Ban against Miller substantially burdens, and would burden, Miller's First Amendment right to freedom of speech.

46. Miller has lost income and faces the prospect of additional lost income, civil penalties and criminal conviction and penalties, the cost and expense of defending himself, and public embarrassment if MEC takes official action to enforce the Lobbying Ban against him.

47. Miller has incurred and will continue to incur court costs and attorneys' fees in addressing MEC's violation of his constitutional rights.

48. Miller has thereby been damaged.

## VIII. Count Four – As-Applied Challenge to the Lobbying Ban (Right to Petition)

49. Miller hereby incorporates his preceding allegations as if fully set out herein.

50. For the reasons set forth in Count Two, the Lobbying Ban is unconstitutional as applied to Miller in that the Lobbying Ban, even if enforceable against others and therefore constitutional on its face, cannot be applied to Miller without violating his First and Fourteenth Amendment rights.

51. The present application of, and substantial likelihood of MEC continuing to apply, the Lobbying Ban against Miller substantially burdens, and would burden, Miller's First Amendment right to petition the government.

52. Miller has lost income and faces the prospect of additional lost income, civil penalties and criminal conviction and penalties, the cost and expense of defending himself, and public embarrassment if MEC takes official action to enforce the Lobbying Ban against him.

53. Miller has incurred and will continue to incur court costs and attorneys' fees in addressing MEC's violation of his constitutional rights.

54. Miller has thereby been damaged.

### IX. Relief Sought

55. Plaintiff Rockne "Rocky" Miller respectfully requests the following relief against Defendants under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983:

    a. Declaratory Judgment that the Lobbying Ban, Mo. Const. art. III, § 2(a), deprives him of his rights, privileges, and/or immunities under the First and Fourteenth Amendments of the U.S. Constitution and is facially unconstitutional, or in the alternative, that it is unconstitutional as applied to him;

    b. Preliminary and permanent injunctions enjoining Defendants from enforcing the Lobbying Ban against him or any other similarly situated persons or entities;

    c. Compensatory damages, or in the alternative, for nominal damages in recognition of the deprivation of his rights;

d. His attorneys' fees and recoverable costs under 42 U.S.C. § 1988(b) or any other allowable statute or authority; and

e. Any other relief that the Court deems just.

Respectfully Submitted,

*/s/ Cole D. Bradbury*
**COLE D. BRADBURY #62760**
Bradbury Law Firm, LLC
PO Box 206
Osage Beach, MO 65065
(573) 745-0772
Cole.D.Bradbury@Gmail.com
ATTORNEY FOR PLAINTIFF

**VERIFICATION**

I, Rockne "Rocky" Miller, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on December 15th, 2021.

Rockne "Rocky" Miller