## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

---

**ROCKNE "ROCKY" MILLER,**

    *Plaintiff,*

v.

**REQUEST FOR EXPEDITED HEARING**

**ELIZABETH ZIEGLER,** in her official capacity
as Executive Director of the Missouri Ethics
Commission, *et al.,*

    *Defendants.*

---

## VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff Rockne "Rocky" Miller seeks a temporary restraining order and preliminary injunction which orders Defendants to cease enforcement of Mo. Const. art. III, § 2(a) (the "Lobbying Ban"):

> After December 6, 2018, no person serving as a member of or employed by the general assembly shall act or serve as a paid lobbyist, register as a paid lobbyist, or solicit prospective employers or clients to represent as a paid lobbyist during the time of such service until the expiration of two calendar years after the conclusion of the session of the general assembly in which the member or employee last served and where such service was after December 6, 2018.

The Lobbying Ban deprives Miller of his First Amendment freedom of speech and right to petition.

## I. Applicable Law

Under Federal Rule of Civil Procedure 65, the Court may issue a temporary restraining order and a preliminary injunction. To grant injunctive relief, the Court considers four factors:

Case 2:21-cv-04233-MDH   Document 2   Filed 12/16/21   Page 1 of 10

(1) the movant's likelihood of success on the merits;

(2) the threat of irreparable harm to the movant;

(3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and

(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The Court must weigh the four factors "to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations and quotations omitted). "[T]he likelihood of success on the merits is most significant." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (citations and quotations omitted).


## II. Background

In 2018, the Missouri Constitution was amended by initiative petition to enact Amendment 1[1], which contained wide-ranging revisions to the state's ethics and campaign finance laws. Amendment 1 included the Lobbying Ban.

Plaintiff Rockne "Rocky" Miller is a licensed professional engineer who has spent more than 30 years providing those services around the state. He is particularly experienced in

---

[1] Several provisions of Amendment 1 have already been held unconstitutional. *See Free & Fair Election Fund v. Mo. Ethics Comm'n*, 903 F.3d 759 (8th Cir. 2018); *Missourians for Fiscal Accountability v. Klahr*, 892 F.3d 944 (8th Cir. 2018); *Make Liberty Win v. Ziegler*, 478 F. Supp. 3d 805 (W.D. Mo. 2020).

environmental engineering. Miller was elected State Representative for Missouri's 124th district in 2012 and served in the Missouri House of Representatives from 2013 to 2021. He is therefore subject to the Lobbying Ban.

In November 2021, Miller was approached by a Missouri LLC ("Prospective Client") which wished to hire Miller to lobby officials in Missouri's executive and legislative branches. The proposed lobbying required knowledge of the legislative and regulatory process, as well as expertise in environmental engineering. Due to Miller's familiarity with the state bureaucracy from his legislative service and his experience in environmental engineering, Miller was uniquely qualified to advocate on Prospective Client's behalf. However, Prospective Client's goals required Miller to serve as both an "executive lobbyist" and a "legislative lobbyist" under Mo. Rev. Stat. § 105.470.

Defendants are the Executive Director and Commissioners of the Missouri Ethics Commission (collectively, "MEC"). Following Prospective Client's inquiry, Miller attempted to register as a lobbyist with MEC in order to comply with the registration and reporting requirements of Mo. Rev. Stat. § 105.473. However, he was unable to register because the application promulgated by MEC requires him to attest "[u]nder penalties of perjury" to his eligibility, which he knows MEC denies due to the Lobbying Ban. Miller cannot lobby on Prospective Client's behalf without registering with MEC or risking prosecution for violating Missouri's lobbyist registration laws. Violation of those laws carry civil fines up to $10,000 and criminal penalties that could result in a felony conviction. Mo. Rev. Stat. §§ 105.473, 105.478. Upon learning that Miller was unable to register as a lobbyist, Prospective Client considered joining in this suit against MEC but declined because of the potential lost time for advocacy and

the risk that MEC could take action under color of law to enforce the Lobbying Ban against Miller and/or Prospective Client. Ultimately, Prospective Client decided not to hire Miller.

Miller wishes to lobby for Prospective Client and possible other during Missouri's upcoming legislative session, which begins on **January 5, 2022**.

## III. Analysis

### A. Miller Has a Likelihood of Success on the Merits.

Under 42 U.S.C. § 1983, a plaintiff may hold state actors accountable for "deprivation of any rights, privileges, or immunities secured by the Constitution." By enforcing the Lobbying Ban, MEC deprives Miller of his First Amendment freedom of speech and right to petition.

#### 1. Freedom of Speech

The First Amendment loathes burdens on political speech. "Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010) (quoting *Fed. Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 464 (2007)). "Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others." *Id.* at 341.

Likewise, discriminating on the basis of the speaker's identity is just as impermissible. "Speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Id.* "Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Id.* "By taking the right to speak from some and giving it to others, the Government

deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice." *Id.* at 340-341. "The First Amendment protects speech and speaker, and the ideas that flow from each." *Id.* at 341. "[T]he Government may commit a constitutional wrong when by law it identifies certain preferred speakers." *Id.* "In the realm of protected speech, the legislature is constitutionally disqualified from dictating the subjects about which persons may speak and the speakers who may address a public issue." *Id.* at 347 (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 784-85 (1978)).

Further, Miller cannot solicit other possible clients during the Lobbying Ban's application to him, even if he does not actually lobby for them. *See* MO. CONST. art. III, § 2(a) ("or solicit prospective employers or clients to represent as a paid lobbyist"). Miller only learned of Prospective Client's interest in his services because Prospective Client approached him; there may be other opportunities for that are or were available to Miller that he has missed because of the chilling effect of the Ban.

MEC's actions show a firm resolve to enforce the Lobbying Ban. Defendant Ziegler, on behalf of the Defendant Commissioners, issued an advisory opinion on the Ban to a different former legislator. *See* Advisory Opinion No. 2021.02.L.002 (attached hereto as Exhibit 1). Defendant Ziegler responded to the former legislator's inquiry by reciting the Lobbying Ban: "you are prohibited from acting or serving as an elected local government official lobbyist 'until the expiration of two calendar years after the conclusion of the session of the general assembly in which' you last served." *Id.* at 2. Ziegler added that the former legislator could not use an LLC to violate the Lobbying Ban, even though the LLC was not subject to the Ban. Ziegler went on to point out that "the Commission has serious concerns about a former elected official avoiding

these Constitutional prohibitions by doing indirectly that which he or she is prohibited from doing directly," and about "the appearance of impropriety that would be associated with such an arrangement." *Id.* at 3. Lest there be any misunderstanding about the MEC's broad interpretation of the Lobbying Ban, Ziegler concluded:

> **The Commission cautions you to be very careful** in carrying out your role as member and manager of this consulting entity. The prohibitions in Article III, Section 2(a) of the Missouri Constitution do apply to you, so even if you do not register or act as a paid lobbyist, **you are prohibited from soliciting lobbying clients and taking actions** in conjunction with the employed lobbyists **that could be interpreted as acting as a paid lobbyist.** Accordingly, while serving as manager and owner of the business, **you are advised to – at a minimum – refrain from participating in and directing the lobbying activities** of the lobbyists that are employed by the limited liability company.

*Id.* at 4 (emphasis added). This a clear threat to enforce the Lobbying Ban against any former legislator who gets too close to the Lobbying Ban, let alone one who actually violates the Ban by speaking to government officials about the "wrong" topic. This is a willful attempt to chill a disfavored group of Missouri citizens' freedom of speech and right to petition.

Here, the plain language of the Lobbying Ban is a *ban*, and MEC has made clear its intent to enforce it as such. Miller, identified by his membership in a small class of speakers, is forbidden from speaking to legislative and executive officials on certain topics for two years. Meanwhile, other lobbyists may speak on the same subjects freely so long as they register and report with MEC. Therefore, the Lobbying Ban serves as a prior restraint on Miller's speech which discriminates against him based on his identity and the content of his speech. Strict scrutiny must apply, and the Lobbying Ban cannot survive any such analysis.

### 2. Right to Petition

The First Amendment also guarantees the right "to petition the Government for a redress of grievances," and lobbying is therefore constitutionally protected conduct. *Calzone v. Summers*, 942 F.3d 415, 422 (8th Cir. 2019) (successful challenge to MEC's interpretation of its lobbying regulations); *see also FTC v. Superior Court Trial Lawyers Ass'n*, 493 U.S. 411, 426 (1990) ("It is, of course, clear that ... efforts ... to lobby District officials to enact favorable legislation ... were activities that were fully protected by the First Amendment."). "While the term 'lobbyist' has become encrusted with invidious connotations, every person or group engaged ... in trying to persuade Congressional action is exercising the First Amendment right of petition." *Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967).

The Lobbying Ban is a blatant prior restraint on Miller's right to petition Missouri officials. By restricting Miller's right to petition the government, the Lobbying Ban also has the effect of restricting Missouri citizens' right to do the same. Government may not indirectly restrict speech by denying access to advisors or other assistance, because "effective public communication requires the speaker to make use of the services of others." *Citizens United*, at 339 (quoting *McConnell v. F.E.C.*, 540 U.S. 93, 251 (2003) (opinion of Scalia, J.)). The Lobbying Ban clearly deprives Miller of his right to petition his government.

### 3. Strict Scrutiny

Strict scrutiny "requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.*, at 340. There is no compelling interest which the government can claim in restricting *former* legislators' speech to their former colleagues and other state officials. Even if such an interest existed, the Lobbying

Ban, as an outright *ban* on a class of speakers' speech, cannot be considered "narrowly tailored" under any interpretation. In the alternative, if the Lobbying Ban is somehow constitutional on its face, Defendants will be unable to show any compelling government interest in suppressing Miller's speech, and the Ban is certainly not narrowly tailored to his situation.

### B. Miller Will Suffer Irreparable Harm

The irreparable harm in this case is straightforward: Miller's speech is being suppressed, and the deprivation of that right is irretrievable and irreparably harmful. Further, Miller has the opportunity to earn lobbying contracts during the remainder of the Lobbying Ban's effect on him (until January 5, 2023), but is unable to do so because of the Ban. He is further prohibited from soliciting lobbying clients while the Ban is in effect, and the chilling effect on the Ban has made at least one possible client unwilling to hire him. Any further damages he suffers due to the Ban will be difficult to ascertain because of the Ban's chilling effect on others, so dollar damages and other traditional remedies are insufficient.

### C. The Balance of Interests Supports Injunctive Relief

The Lobbying Ban serves no lawful purpose, and MEC has no compelling governmental interest in enforcing it. Because Miller's First and Fourteenth Amendment rights easily outweigh MEC's desire to deprive Miller of those rights, this factor weighs in Miller's favor.

### D. The Public Interest Supports Injunctive Relief

The public has a strong interest in upholding the U.S. Constitution, and it "has no interest in enforcing an unconstitutional ordinance." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). The Lobbying Ban extends to every former legislator who has left office in the past two years, and injunctive relief will vindicate their rights as well as Miller's.

Case 2:21-cv-04233-MDH   Document 2   Filed 12/16/21   Page 8 of 10

## IV. Relief Sought

Plaintiff Rockne "Rocky" Miller respectfully requests the following relief against Defendants under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Fed. R. Civ. P. 65:

- A temporary restraining order enjoining Defendants from enforcing the Lobbying Ban, Mo. Const. art. III, § 2(a);

- A preliminary injunction enjoining Defendants from enforcing the Lobbying Ban, Mo. Const. art. III, § 2(a);

- That such order or injunction specifically enjoin Defendants from conducting any investigation, initiating any administrative or other proceedings, making any criminal referral, imposing any fine or other sanction, or otherwise attempting to enforce the provision identified above against Miller or any other people, groups, or entities, for:

  - violating or attempting to violate any of the provisions listed above;

  - registering as a lobbyist or filing any lobbying reports or other statements, so long as such filings are otherwise compliant with Missouri's other generally applicable lobbying laws; or

  - retaliating against any person who takes any of the above actions.

- That such order or injunction specifically compel Defendants to permanently rescind Advisory Opinion No. 2021.02.L.002;

- That, pursuant to Fed. R. Civ. P. 65(d)(2), such order or injunction apply to the above-named Defendants, their officers, agents, employees, and attorneys; and all other persons acting in active concert with them.

Case 2:21-cv-04233-MDH   Document 2   Filed 12/16/21   Page 9 of 10

- That such order or injunction require Defendants to post prominent public notice thereof on the Missouri Ethics Commission's website.

Respectfully Submitted,

/s/ Cole D. Bradbury
**COLE D. BRADBURY #62760**
Bradbury Law Firm, LLC
PO Box 206
Osage Beach, MO 65065
(573) 745-0772
Cole.D.Bradbury@Gmail.com
ATTORNEY FOR PLAINTIFF

## VERIFICATION

I, Rockne "Rocky" Miller, declare as follows:

1. I am the Plaintiff in the present case and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Motion, and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on December _15th_, 2021.

Rockne "Rocky" Miller