**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

ROCKNE "ROCKY" MILLER, et al.,      )
                                    )
         Plaintiffs,         )
                                    )
        v.               )      Case No. 2:21-CV-04233-MDH
                                    )
ELIZABETH ZIEGLER, et al.,       )
                                    )
        Defendants.     )

## ORDER

Before the Court is Plaintiffs' Motion to Exclude Evidence from Ms. Meredith McGehee under FRE 702 and Daubert. Defendants have responded and the matter is now ripe for review. For reasons herein, Plaintiffs' Motion is **DENIED.**

## STANDARD

An expert witness must (1) be qualified by virtue of his or her specialized "knowledge, skill, experience, training or education," (2) provide testimony based on "sufficient facts or data," (3) provide testimony that is "the product of reliable principles and methods," and (4) reliably apply "the principles and methods to the facts of the case." Fed. R. Evid. 702. The "proponent" of the testimony – whether plaintiff or defendant – has "the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." See Fed. R. Evid. 702 advisory committee's note (2000).

The Federal Rules of Procedure, Federal Rules of Evidence, and *Daubert* require more than the statement of an opinion. Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure requires expert reports to contain "a complete statement of all opinions the witness will express and the

1

basis and reasons for them" and "the facts or data considered by the witness in forming them." A retained expert is required to "prepare a detailed and complete written report, stating the testimony the witness is expected to present during direct examination, together with the reasons therefor." Fed. R. Civ. P. 26(a)(2) advisory committee's note (1993).

Under Rule 702, trial courts serve as gatekeepers, "making a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Glastetter v. Novartis Pharms. Corp.*, 252 F.3d 986, 988 (8th Cir. 2001) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592–93 (1993)). District courts have considerable discretion in ruling on the admissibility of expert testimony and must separate expert opinion evidence "based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* at 989. An expert witness must (1) be qualified by virtue of their specialized "knowledge, skill, experience, training, or education," (2) provide relevant testimony, in that it "assists the trier of fact to understand the evidence or to determine a fact in issue," and (3) provide reliable testimony, in that it is based on trustworthy evidence. FED. R. CIV. P. 702; *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). The proponent of the expert testimony bears the burden of establishing that each of these criteria is met by proving the admissibility of the evidence by a preponderance of the evidence. *Lauzon*, 270 F.3d, at 686. Furthermore, under Rule 403, expert testimony must be excluded where its "probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Miller v. Bayer Healthcare Pharms. Inc.*, No. 4:14-cv-00652-SRB, 2016 U.S. Dist. LEXIS 188485, at *2–3 (W.D. Mo. Nov. 30, 2016).

**DISCUSSION**

## I.     Ms. McGehee has specialized knowledge

Plaintiffs argue that this Court should not admit testimony or other evidence from Ms. McGehee because she lacks scientific, technical, or other specialized knowledge." (Doc. 63-1 at 2). In support, Plaintiffs argue, *inter alia*, that Ms. McGehee is "not a political scientist" and lacks an ability to "perform statistical analysis." (Doc. 63-1 at 2). Plaintiffs also point to Ms. McGehee's lack of publications in peer-reviewed journals and her lack of familiarity with lobbying in Missouri specifically. (Doc. 63-1 at 2-3). Plaintiffs concede, however, that Ms. McGhee has published many editorial-type pieces, supervised studies sponsored by advocacy organizations, and worked in lobbying and advocacy with the federal government. (Doc. 63-1 at 2).

Plaintiffs' argument takes too strict an interpretation of the requirements under FRE 702. As Defendants explain, the FRE 702 factors "are not exclusive…and they need not be considered in every case because, '[o]f course, the *Daubert* reliability factors should only be relied upon to the extent that they are relevant and the district court must customize its inquiry to fit the facts of each particular case.'" *Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (quoting *Jaurequi v. Carter Mfg. Co.,* 173 F.3d 1076, 1083 (8th Cir.1999). Though a PhD in political science and a long list of peer-reviewed publications may be helpful to support admissibility under FRE 702, such qualifications are not necessary given the issues of this particular case, which concern constitutionality of a two-year ban on paid lobbying in Missouri for former employees of the General Assembly. Ms. McGehee has extensive experience in and specialized knowledge of lobbying and government ethics generally. Throughout her approximate forty years working in Washington, D.C., Ms. McGehee has worked in Congress and a variety of other advocacy organizations focused on democracy and government ethics. (Doc. 73-2, 16-17). Specifically, Ms.

McGhee has served as senior vice president of lobbying, policy, and research at Common Cause, a "good government citizens lobby." (Doc. 73-2 at 3). As an independent consultant, Ms. McGehee worked as a strategist and lobbyist for a variety of non-profit organizations including the Campaign Legal Center, the Alliance for Better Campaigns, League of Women Voters, and Democracy 21. (Doc. 73-2 at 3). Ms. McGehee has also served as executive director of Issue One, an organization dedicated to democracy reform. (Doc. 73-2 at 16-17). Ms. McGehee has testified before Congress on at least three occasions, at least twice on issues related to ethics reform in government. (73-2 at 21). Throughout her career, Ms. McGehee has authored numerous op-eds for national and local media spanning a variety of issues related to government ethics and reform. (Doc. 73-2 at 18-21). During her time with Common Cause, Ms. McGehee led a "coalition effort to enact the historic Bipartisan Campaign Finance Reform Act of 2002." (Doc. 73-2 at 17). Ms. McGehee also managed and led throughout her career various studies on issues related to campaign finance and money in politics. (Doc. 63-2 at 168-69). This extensive experience, all related to issues of lobbying and government ethics, represents Ms. McGehee's specialized knowledge in matters relevant to this dispute.

Related are Plaintiffs' arguments regarding Ms. McGehee's application of reliable principles and methods to the facts of this particular case. Plaintiffs argue, *inter alia*, that Ms. McGehee failed to "use any scientific methods, techniques, or analysis to arrive at her opinions." (Doc. 63-1 at 4). Plaintiffs also take issue with Ms. McGehee's knowledge about the facts of this specific case and lobbying in Missouri more specifically. (Doc. 63-1 at 3-11). Again, Plaintiffs have taken too strict a view of the requirements of FRE 702. Experts are not required to perform a scientific review in every case. Rather, the dictates of admissibility hinge at least in part on the specific facts of a particular case. The Eighth Circuit has recognized that "there are social sciences

in which the research, theories and opinions cannot have the exactness of hard science methodologies." *Jenson v. Eveleth Taconite Co.,* 130 F.3d 1287, 1297 (8th Cir. 1997). Here, Ms. McGehee's analysis included reviewing the text of the law at issue, conducting secondary research and offering personal knowledge about prior cases dealing with corruption and its appearance, conducting secondary research and offering personal knowledge about similar laws in other states and jurisdictions, and opining on how the Missouri lobbying ban reduces corruption. (Doc. 73-2). Such analysis can be sufficiently reliable where, as here, the issue is the constitutionality of a particular amendment which seeks to reduce corruption by limiting former legislator's ability to serve as paid lobbyists.

## II. Ms. McGehee's opinion assists the trier of fact to determine a fact in issue

Plaintiffs argue that "it is not clear what fact Ms. McGehee is here to assist the Court in understanding." (Doc. 63-1 at 11). Ms. McGehee's opinion generally concerns Missouri's lobbying ban, lobbying bans in other states and jurisdictions, corruption, and how such lobbying bans work to reduce corruption. (Doc. 73-2). Plaintiffs have been clear that one of their principal arguments is that the record in this case lacks evidence of any examples of corruption or its appearance that justify Missouri's lobbying ban. (Docs. 78, 85). Plaintiffs have also argued that Missouri's lobbying ban fails to advance the compelling state interest of reducing *quid pro quo* corruption and its appearance. (Docs. 78, 85). Ms. McGehee's opinion speaks directly to these issues. Ms. McGehee cites examples of corruption that the Missouri law seeks to prohibit and offers an analysis of how the law may effectuate such a prohibition. Further, to the extent that Ms. McGehee's opinion seeks to "educate the factfinder about general principles," this Court finds that Ms. McGehee's testimony concerns a subject that, while not as technical as thermodynamics, is

5

nevertheless not "within the knowledge or experience of laypeople." *United States v. Coutentos*, 651 F.3d 809, 821 (8th Cir. 2011).

### III. Ms. McGehee's opinion is based on sufficient facts

Plaintiffs argue that Ms. McGehee's opinion is based on insufficient facts or data. Plaintiffs argue that Ms. McGehee has relied on no data, and largely anecdotal evidence about prior examples of corruption. Plaintiffs again, however, base their argument on too strict an interpretation of FRE 702's admissibility standard. Ms. McGehee's report cites to a variety of sources including articles published in local and national news outlets, databases documenting "revolving door" politicians, statutes, and judicial opinions. Ms. McGehee also cites to congressional reports. Ms. McGehee's report provides a detailed analysis of the Missouri constitutional provision at issue as well as similar laws in other states and jurisdictions. Absence of statistical analysis and findings based on big datasets is not fatal to Ms. McGehee's opinion, especially where the issues relate to the Plaintiffs' constitutional allegations about a single Missouri law. This is particularly true where Plaintiffs have offered no evidence that quantitative research methods offer a particularly robust manner of capturing the phenomena at the center of this case, corruption and its appearance.

### IV. Plaintiffs' *Daubert* motion was timely

Defendants argue Plaintiffs' *Daubert* motion was untimely. Because of the ECF System unavailability from 2:00pm October 14-October 16, however, Plaintiffs' *Daubert* motion was not due until October 16, 2022. Plaintiffs' Daubert motion was therefore timely.

6

**CONCLUSION**

For the foregoing reasons, Plaintiffs' *Daubert* motion as to Ms. McGehee is **DENIED**.


 **IT IS SO ORDERED.**

Dated: March 30, 2023                                   */s/ Douglas Harpool*
                                                        **DOUGLAS HARPOOL**
                                                        **United States District Judge**